Minshall, J.
(dissenting): It seems clear to my mind that sections 6 and 7 of the ballot law as amended April 18,1892, (89 Laws, 434,)and April 8, 1898, (93 Laws, 94)respectively, requiring a party to have polled a certain per cent, of the aggregate rate at the previous election, before it can have its nominees placed on the official ballot, or a petition signed by an equal number of electors, pledging themselves to vote for the nominees, impair the right secured by the constitution to every elector *634 to vote at all elections, and to do so by ballot. Sections 1 and 2, article 5, Constitution. It is claimed that this right is not interfered with, because the right is given the electors to erase any name on the ballot, and insert that of the person of his choice. This is ing’enious but not ingenuous. It overlooks the object an elector has in casting his ballot. He does not cast it as a matter of amusement. His object is to secure the election of a person or persons who will best represent him in his own views on questions of public policy and the administration of public affairs. Hence it is of vital importance to him in the exercise of his right, that those for whom he votes, should have an equal chance at the polls of being supported by all in harmony with the policy they represent, and any regulation which interferes with this right, impairs his constitutional right as an elector. That this is done by the sections above referred to in the ballot law in all cases where a particular party failed at the previous election to secure a certain per cent, of the aggregate vote cast, or is a new party, should it seem be plain to any unbiased mind. For it seems too plain to require argument that where the nominees of a party must be written on the ballot by those who desire to vote for them, such nominees have not an equal chance of an election, whatever their character or political views may be, with those whose nam.es are printed on the official ballot, and may be voted for by the simple act of making a mark. No one will, I apprehend, deny that a party has an advantage where its nominees may be voted for on what is known as a “straight ticket” over one whose nominees cannot be so voted for. It was to deprive leading parties of this supposed unfair *635 advantage that the original Australian ballot system was devised. It required all nominees for a particular office to be placed on the ballot under a proper designation of the office without reference to any party nomination, so that the electior would be required to select for himself the persons for whom he desired to vote. It is so done in Massachusetts and a number of the other states. But in this state we have simply adopted the name with hardly a trace of the system. The well understood advantage of a “straight ticket” is denied to all parties who cannot have their nominees placed on the official ballot, and electors who desire to vote for them must write the names on the ballot. This not only impairs the right, but places an unequal burthen on the voter against whom this discrimination is made; and must necessarily diminish the number of votes that would otherwise be east for such nominees. The advantage of printed ballots in securing results over such as must be written by the voter himself, is too apparent and well borne out by experience, to admit of denial.
This evident unfairness is sought to be justified on the ground that it is necessary to the adoption of the Australian system, as without such regulation there would be no limit to the extent of the ballot; or in other words in order to secure the supposed benefits of the system, the constitutional right of an elector to vote at all elections, must be pared down so as to secure an official ballot of moderate dimensions. This simply places the size of the ballot — a piece of paper — above the right of the elector secured to him by the constitution. I do not deny the power of the legislature to regulate the ballot and the casting of it; but all such *636 regulations must be reasonable and not impair the right to vote. The regulation by which the nominees of one party are excluded from the official ballot, manifestly impairs this right. It measurably excludes all who support them from the polls, by excluding them from the facilities in voting enjoyed by all others. They are at least handicapped in the race. That the court of Pennsylvania or New Jersey may have sustained similar laws, is no reason why this or any other court should lend itself to a flagrant violation of the right to vote.
In State ex rel v. Kinney, Secretary, 57 Ohio St., 221, the only question' presented and considered, was the right of a party to have a device at the head of its ticket as provided for in section 12 of the law. This is not a constitutional right as is the right to vote; and depends upon a compliance with the law. The invalidity of the sections here in question, were not mooted in the case, and cannot control the judgment of the court in this case. Hence •the last clause of the majority opinion, referring to that case, has no pertinency in the present inquiry.